UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL E. MOCKOVAK,

                Petitioner,

   v.

RON HAYNES,

               Respondent.

Case No. C18-671-JLR-MLP

ORDER

## I. INTRODUCTION

This is a federal habeas action filed under 28 U.S.C. § 2254. Currently pending before the Court is Petitioner's Motion for Leave to Conduct Discovery ("Petitioner's Discovery Motion") (Pet.'s Disc. Mot. (dkt. # 33)) and Petitioner's Motion for Extension of Time for Filing Traverse and to Establish Case Schedule ("Petitioner's Extension Motion") (Pet.'s Ext. Mot. (dkt. # 36)).

On August 14, 2020, Respondent filed a response to both Petitioner's Discovery and Extension Motions. (Respondent Disc. Resp. (Dkt. # 40); Respondent Ext. Resp. (Dkt. # 41).) On August 27, 2020, and on August 28, 2020, Petitioner filed a reply to both Motions. (Pet.'s Disc. Reply (Dkt. # 46); Pet.'s Ext. Reply (Dkt. # 49).) On September 8, 2020, Respondent filed a supplement to his response to Petitioner's Discovery Motion. (Supp. Disc. Resp. (Dkt. # 52).) On October 13, 2020, the Court heard oral argument on this matter. (Dkt. # 56.)

ORDER - 1

For the reasons explained below, Plaintiff's Discovery Motion is (dkt. # 33) is DENIED and Plaintiff's Extension Motion (dkt. # 36) is GRANTED in part and DENIED in part.

## II. BACKGROUND

On June 19, 2020, Petitioner filed an amended habeas petition challenging his custody under a state court judgment and sentence pursuant to 28 U.S.C. § 2254. (Pet. (Dkt. # 28).) Petitioner's third claim alleges the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963), regarding Daniel Kultin, a Russian immigrant who testified against Petitioner in his underlying criminal case. (*Id.* at 6.) Petitioner alleges Kultin did so in order to curry favor with his citizenship application because he allegedly committed immigration fraud and gained entrance to the United States by falsely claiming to need asylum. (*Id.*) Petitioner additionally alleges state law enforcement provided false information concerning Kultin's citizenship status, waited months before correcting the false information, and never provided all required *Brady* information. (Pet.'s Disc. Mot. at 3.)

Petitioner previously attempted to obtain *Brady* information on the subject matter for his state collateral proceedings by requesting documents pursuant to Washington State's Public Records Act in November 2013. (Pet.'s Disc. Mot. at 5.) Based on this request, the King County Prosecuting Attorney's Office eventually began producing redacted documents at the end of September 2014 through October 29, 2014. (*Id.* at 7.) Petitioner's deadline to file a personal restraint petition ("PRP") on the *Brady* issue for state collateral review was December 3, 2014. (*Id.*) However, Petitioner's counsel failed to timely file a PRP raising the issue. (*Id.*) Petitioner's counsel asserts he did not have enough time to finish his review of the produced documents by December 3, 2014, to meet the deadline to file a timely file. (*Id.*)

Petitioner's Discovery Motion seeks leave to: (1) serve subpoenas on several state and federal agencies and individuals; (2) to depose at least six named individuals; and (3) to depose other unnamed individuals, whom Petitioner may identify through such discovery, to help determine what exculpatory information was allegedly withheld from Petitioner to support his *Brady* claim. (Pet. Disc. Mot. at 1, 17-20.) In the Answer to Petitioner's amended habeas petitioner, Respondent raised that Petitioner's third claim is procedurally barred under state law because Petitioner's counsel failed to timely file a PRP raising the *Brady* issue and because Petitioner additionally fails to demonstrate the cause and prejudice required to excuse his procedural default on this issue. (Answer (Dkt. # 29) at 13-20.) Specifically, Respondent cites to the Washington Court of Appeals ruling that Petitioner failed to file his second PRP within the one-year period required by RCW 10.73.090 and no time-bar existed to excuse his late filing, therefore, his second PRP was time-barred. (*Id.*; *see* State Court Rec., Ex. 62 (Dkt. # 44-1) at 155-163.)

### III.  DISCUSSION

#### A.  Motion for Leave to Conduct Discovery

##### i.  *Legal Standard*

Rule 6(a) of the Rules Governing Section 2254 Cases provides a judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. The Supreme Court has previously established that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Discovery is properly limited in habeas corpus actions because it "is not the trial itself but a collateral attack upon a standing conviction." *Austad v. Risley*, 761 F.2d 1348, 1355 n.4 (9th Cir. 1985). Moreover,

"courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. U.S. Dist. Court N.D. Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996).

Absent a showing of good cause, the Court should deny a motion for leave to conduct discovery. *Rich v. Calderon*, 187 F.3d 1064, 1067-68 (9th Cir. 1999); *see Stahl v. Haynes*, 2020 WL 5632510, at *1 (W.D. Wash. Sept. 21, 2020). To show good cause, the petitioner must set forth specific facts showing discovery is appropriate in the particular case. *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3rd Cir. 1994) (*citing Mayberry v. Petsock*, 821 F.2d 179, 185 (3rd Cir. 1987)). Accordingly, "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy,* 520 U.S. at 908-09 (quoting *Harris v. Nelson,* 394 U.S. 286, 300 (1969)).

### ii. *Discovery Motion*

Petitioner argues in his Discovery Motion that there is good cause for leave to conduct discovery to support his claim the Government failed to provide exculpatory information concerning Kultin. (Pet.'s Disc. Mot. at 1-2.) Based on his inability to timely file the PRP, Petitioner argues there is good cause for leave to conduct discovery because the cause and prejudice elements for excusing a procedural default exist in this case. (*Id.* at 14-17.) As such, Petitioner argues Respondent cannot dispose of his *Brady* claim by labeling his failure to file a PRP within Washington's one-year statute of limitations as a procedural default. (*Id.*) On reply and at oral argument, Petitioner additionally argues good cause exists, pursuant to *Bracy* and *Harris*, because the allegations before the Court show reason to believe Petitioner may be entitled to relief. (Pet.'s Disc. Reply at 5-6; Dkt. # 56.)

ORDER - 4

Respondent counters that Petitioner fails to show good cause for discovery because none of the discovery proposed by Petitioner would develop evidence to show cause and prejudice to excuse the procedural default, and instead, the proposed discovery would go to the merits of the *Brady* claim itself. (Respondent's Disc. Resp. at 3-4.) Respondent contends Petitioner fails to demonstrate how the proposed discovery would provide evidence to show cause and prejudice exists to excuse his procedural default because the default occurred due to Petitioner's counsel failure to timely file a PRP on the *Brady* claim. (*Id.* at 5.) Respondent additionally argues Petitioner does not show good cause because his proposed discovery amounts to an improper "fishing expedition" in which Petitioner hopes to find something of value without any specific proof such exculpatory information exists. (*Id.* at 6.) Respondent argues that, as the Washington Court of Appeals previously determined, Petitioner's claims all rest upon speculation that Kultin engaged in misconduct that the Government covered up. (Respondent's Supp. Disc. Resp. at 2 (citing State Court Rec., Ex. 62 at 155-163).)

Based on the record before the Court, Petitioner has not demonstrated good cause exists for leave to seek discovery. Here, the *Brady* claim at issue in the amended habeas petition was procedurally defaulted due to the failure of Petitioner's counsel to timely file the PRP. Despite having received the discovery from the Government almost a month prior to the deadline, Petitioner's counsel failed to timely file a PRP raising the *Brady* issue. *See* State Court Rec., Ex. 62 at 155-163. Though Petitioner's sought discovery would potentially assist in discovering facts to help substantively address the merits of the *Brady* claim, Petitioner does not directly explain or demonstrate how discovery would assist him in defending against the procedural default due to counsel's failure to timely file the PRP raising the *Brady* claim. *See Bracy,* 520 U.S. at 908-09; *see also Stahl*, 2020 WL 5632510 at *1 (finding habeas petitioner's motion for

ORDER - 5

discovery based on *Brady* claim "futile" where petitioner procedurally defaulted issue at the state court level).

Moreover, the applicable standard requires Petitioner set forth specific facts showing discovery is appropriate. *See* Rule 6(a) of the Rules Governing Section 2254 Cases. However, Petitioner's similar allegations concerning Kultin were previously found speculative by the Washington Court of Appeals in its decision finding Petitioner's second PRP untimely. (*See* State Court Rec., Ex. 62 at 155-163.) On this aspect, the Washington Court of Appeals found:

> Mockovak argues that the State violated the due process rule of *Brady* and *Giglio* [v. *United States*, 405 U.S. 150, (1972)] by failing to disclose Kultin's pending citizenship application, the nature of his prior INS arrest, and the fact that he was suspected of entering the United States fraudulently. Mockovak argues that the redacted records produced in the PRA case show that *Brady*/*Giglio* information was improperly withheld.
>
> . . .
>
> Mockovak asserts that some details about Kultin's status were originally misreported. Mockovak alleges that he was initially told that Kultin was a United States citizen, when he was not. Then, he asserts that he found out 11 months after he was charged that Kultin was a lawful permanent resident who had been granted asylee status in 1997.
>
> This court has previously found that the State provided evidence to Mockovak before trial that: (1) Kultin was a lawful permanent resident at the time of trial rather than a United States citizen, (2) Kultin was in the United States on asylum status, and (3) INS arrested Kultin in 1997. *Mockovak,* No. 74459-3-I, slip op. at 36-37. Kultin's actual status was disclosed to Mockovak before trial. There is no basis to find that the State acted in bad faith, deceived, or made false assurances because it initially stated that Kultin was a citizen, but then corrected itself and informed Mockovak of Kultin's immigration status before trial.
>
> . . .
>
> Mockovak asserts that Kultin lied about needing asylum status because, during his deposition, he refused to answer the question. He argues that this court can infer that Kultin's truthful answer would show that Kultin had committed a crime when he got his asylum status.
>
> During the deposition, Kultin stated that he was part of his father's immigration process to the United States. He immigrated when he was 18, and, at the

ORDER - 6

deposition, stated that he did not remember much during that time. Kultin also appeared to be distrustful of the deposer. When Kultin told the deposer that asylum status was a better question for his father, the deposer asked, "I don't. I'm asking about you. You didn't need asylum; did you?" Kultin responded, "I have a feeling you're trying to make me guilty of something, so I'm not going to answer this, and again, refer you to my father." His statements that he did not remember much but believed he was part of his father's application suggest that he did not have the answer. He referred the questioner to a source he believed had the answer. He declined to speculate on the answer fearing trickery by counsel.

Nothing indicates that he had additional knowledge with which to respond. This is qualitatively different from an assertion of a right to not answer a question to which he had the answer, but it would be incriminating. The court is not required to draw an adverse inference from his refusal to provide a further response, *See Diaz*, 165 Wn. App, at 86.

Even if this court were to draw a negative inference from Kultin's refusal to answer the question, the inference would not establish a fact of illegal immigration status. And, it is not a sufficient basis to find that the State knew about or withheld information at the time of Mockovak's trial that Kultin entered the United States fraudulently.

In his deposition, Kultin never said that he entered the United States fraudulently, and there is no evidence of this claim in the deposition to which Mockovak cites. If the State had no "reason to believe" Kultin committed fraud when he entered the United States, there was nothing to be "disclosed." We cannot find that the State failed to act, let alone acted in bad faith, deceived, or made false assurances because it did not tell Mockovak that there was "reason to believe" that Kultin entered the country fraudulently.

. . .

Mockovak asserts that his counsel was not told until one month before trial that Kultin had been arrested by the INS, and that he was never told the basis of the arrest. For support, in addition to Kultin's deposition, Mockovak cites an April 10, 2009 FBI report by George Steuer. The Steuer report states that Kultin was once arrested by immigration officials, and that the case was dismissed. The State disclosed evidence to Mockovak before trial that the INS arrested Kultin in 1997. *Mockovak*, No. 74459-3-I, slip op. at 36-37

Mockovak has not provided evidence that KCPA [King County Prosecutor Attorney's Office] knew the nature of the INS arrest and failed to disclose it. The implication of the inquiry is that Kultin was in the United States illegally. Certainly, the INS had the opportunity to ascertain if Kultin had entered the country fraudulently when he was arrested, but rather than prosecute, they released him. The record discloses no reason the State had to believe Kultin was

ORDER - 7

> here illegally. Thus, there is no basis on which to find that the State acted in bad faith, deceived, or made false assurances in not disclosing what it did not know.
>
> Mockovak claims "it was never disclosed that Kultin either had an application for citizenship pending at the time of Mockovak's trial, or, alternatively that Kultin intended to file an application for U[nited] S[tates] citizenship as soon as Mockovak's trial was finished." Finally, he asserts that it was not disclosed that Kultin was granted United States citizenship after Mockovak's trial finished.
>
> The April 2009 Steuer report states that Kultin "is currently in the application process" to become a United States citizen. This court previously found that, before trial, the State provided documentation to Mockovak showing that Kultin had an immigration application pending in April 2009. *Mockovak*, No, 74459-3-I, slip op, at 37. Kultin filed for citizenship again during 2011, *Id.* In Kultin's deposition, he was asked, "Did you tell any law enforcement officer that you had an application pending?" Kultin answered, "Not that I remember." When he was asked if he told anyone at the FBI if he had a citizenship application pending, Kultin answered, "I don't remember saying that." Kultin stated that his "application for citizenship didn't happen until sometime later [after the trial]."
>
> Whether the FBI learned of Kultin's application for citizenship from Kultin or elsewhere is of no consequence. The fact that Kultin had applied for citizenship was disclosed to Mockovak before trial.
>
> As this court previously found in his [Public Records Act] case, Mockovak's theories on the nature of the gap between his 2009 application and his 2011 application are all speculative. *Id.* at 37-38, And, this court also found that law enforcement, KCPA, and Kultin all stated that Kultin did not receive any promise of immigration assistance for his testimony in the case, *Id.* at 2, 38.
>
> . . .
>
> Mockovak also argues that the FBI assigned a victim specialist to provide "assistance" to Kultin. Mockovak cites e-mails in which the prosecutor states that she is going to tell Kultin's attorney "to expect her assistance," and another e-mail to Kultin explaining who the "victim specialist" is. These e-mails do not show any communication between the "specialist" and Kultin, and this court has no basis to infer that the specialist offered Kultin assistance with his citizenship status.

(State Court Rec., Ex. 62 at 155-163.) The Court sees no reason to depart from the Washington Court of Appeals' determination that Petitioner's allegations concerning Kultin are anything but speculative and do not establish good cause for granting discovery. *See Runningeagle v. Ryan*, 686 F.3d 758, 769 (9th Cir. 2012) (a petitioner

ORDER - 8

must do more than "merely speculate" to support a *Brady* claim). Consequently, Petitioner's Discovery Motion is denied.

### B.       Motion for Extension of Time and to Establish Case Schedule

Petitioner additionally moves the Court to extend his time to file a traverse and to establish a case schedule. (Pet.'s Ext. Mot. at 1.) Petitioner requests the Court address the pending motions before requiring Petitioner to file his traverse, and that the Court provide guidance to the parties due to the unsettled nature of the State Court Record and whether discovery will be ordered. (*Id.* at 1-3.) Additionally, Petitioner asks the Court to establish a case schedule allowing ample time for discovery to take place. (*Id.* at 4, 8-9.)

Respondent argues that although Petitioner labels his motion as one for an extension of time, Petitioner actually argues for an entirely different schedule that does not comport with court rules, statute, or common practice in habeas corpus cases. (Respondent's Ext. Resp. at 2.) Instead of seeking an extension of time, Respondent contends Petitioner argues about the merits of his claims, procedural defenses, and the need for a new schedule that automatically includes an evidentiary hearing. (*Id.*) Respondent argues this places "the cart before the horse" as Petitioner's proposed schedule would require discovery and an evidentiary hearing on the merits of the claims before the traverse was filed or the Court considered the threshold issue of whether the second and third claims are procedurally barred. (*Id.* at 2-3.) Respondent does not object to a reasonable extension of time. (*Id.* at 4.)

Here, a reasonable extension to file the traverse is warranted based on the settling of the State Court Record and the need for oral argument on Petitioner's Motions. The parties' indication at oral argument was that the State Court Record is mostly established at this point. (*See* Dkt. # 56.) Based on the Court's determination on Petitioner's Discovery Motion, the Court declines to establish a case schedule that allots any additional time for discovery.

ORDER - 9

Accordingly, having considered the parties' submissions, oral argument, the balance of the record, and the governing law, the Court hereby ORDERS:

(1)  Petitioner's Discovery Motion (dkt. # 33) is DENIED.

(2)  Petitioner's Motion for Extension of Time for Filing Traverse and to Establish Case Schedule (dkt. # 36) is GRANTED in part and DENIED in part. Petitioner's request for an extension of time to file the traverse is GRANTED. Petitioner is ordered to file the traverse by **November 6, 2020**. Petitioner may move for further extension if the contents of the State Court Record remains unsettled by that time. Petitioner's request for a case schedule allowing additional time for discovery is DENIED.

(3)  The Clerk is directed to send copies of this Order to the parties and to the Honorable James L. Robart.

Dated this 16th day of October, 2020.

_____
MICHELLE L. PETERSON
United States Magistrate Judge