1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

MICHAEL E. MOCKOVAK,

Petitioner,

11

v.

12

RON HAYNES,

13

Respondent.

14

CASE NO. C18-0671JLR-MLP

ORDER ADOPTING IN PART
THE REPORT AND
RECOMMENDATION

15

## I.    INTRODUCTION

16

This matter comes before the court on United States Magistrate Judge Michelle L.

17

Peterson's Report and Recommendation ("R&R") (R&R (Dkt. # 75)) and Petitioner

18

Michael E. Mockovak's objections to the R&R (Obj. (Dkt. # 78)).  The court has

19

reviewed Mr. Mockovak's amended habeas petition (Am. Pet. (Dkt. # 28)), his traverse

20

(Traverse (Dkt. # 64)), Judge Peterson's R&R, Mr. Mockovak's objections to the R&R,

21

Respondent Ron Haynes's ("the Government") response to those objections on behalf of

22

the State of Washington (Resp. (Dkt. # 79)), the remainder of the record, and the

1  applicable law.  Being fully advised,[1] the court ADOPTS in part the R&R, DENIES Mr.

2  Mockovak's objections, and DENIES his petition for a writ of habeas corpus.

3  ## II.      BACKGROUND

4      Mr. Mockovak filed this habeas petition under 28 U.S.C. § 2254 seeking a new

5  trial or a new sentencing hearing on his convictions in state court for solicitation of

6  murder, attempted murder, conspiracy to commit theft, and attempted theft, all in the first

7  degree.[2]  (*See* Am. Pet. ¶¶ 11.6-11.7; Traverse at 99; State Ct. Rec. I (Dkt. # 42-1), Ex. 1

8  at 2-9.[3])  At trial, Mr. Mockovak presented an entrapment defense.  (State Ct. Rec. I, Ex.

9  2 ("6/6/16 Order on 1st PRP") at 17.)  Mr. Mockovak now raises three grounds for relief:

10  (1) violation of his Sixth Amendment right to effective assistance of counsel (Am. Pet.

11  ¶¶ 5.1-5.12, 8.1-8.4); (2) violation of due process through a jury instruction that misstated

12  the law on entrapment (*id.* ¶¶ 5.1, 5.13-5.15, 8.5); and (3) violation of his Fourteenth

13  Amendment right to obtain exculpatory information as laid out in *Brady v. Maryland*,

14  373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) (*id.* ¶¶ 5.1,

15  5.16-5.22, 8.6-8.10).[4]

16  //

---

17  [1] No party requests oral argument (*see* Obj. at 1; Resp. at 1), and the court finds that oral
18  argument would not be helpful to its disposition of the objections, *see* Local Rules W.D. Wash.
   LCR 7(b)(4).

19  [2] The R&R presents a more exhaustive version of the facts that the court adopts.  (*See*
20  R&R at 2-11.)

21  [3] When citing to the State Court Record, the court cites to the page numbers at the bottom
   left corner of the exhibits.  (*See generally* State Ct. Rec.)

22  [4] Mr. Mockovak and the R&R refer to this third ground of relief as the *Giglio* claim.  (*See*
   Obj. at 1-9; R&R at 16-19.)

1    Regarding his first claim of ineffective assistance of counsel, Mr. Mockovak

2    alleges that his trial counsel committed "multiple acts of deficient conduct" that fall into

3    the following categories.  (*See id.* ¶ 8.2.)  First, his trial counsel failed to investigate and

4    to present psychological evidence of Mr. Mockovak's "learned helplessness, heightened

5    suggestibility and heightened fear responses" due to the sexual abuse he suffered as a

6    child.  (*Id.* ¶¶ 8.2(a), (f)-(g), (k)-(l).)  Second, his counsel proposed the Washington

7    Pattern Jury Instruction ("WPIC") on entrapment, which Mr. Mockovak contends was

8    "legally incorrect" because it confused the number of elements and whether the jury

9    should analyze the defense using an objective or subjective test.  (*Id.* ¶¶ 8.2(b)-(c).)

10   Third, when the prosecution discussed the allegedly erroneous WPIC in closing

11   arguments, his counsel did not object.  (*Id.* ¶¶ 8.2(d)-(e).)  Fourth, his counsel failed to

12   properly investigate, cross examine, and impeach the prosecution's main witness, Daniel

13   Kultin, who worked as an informant for the Federal Bureau of Investigation ("FBI") and

14   plotted the murder with Mr. Mockovak.  (*Id.* ¶¶ 8.2(h)-(j); 6/6/16 Order on 1st PRP at

15   12-17.)  Fifth, and lastly, his counsel failed to argue at sentencing that Mr. Kultin had a

16   motive to "lie and curry favor with federal officials" to obtain citizenship and avoid

17   deportation.  (Am. Pet. ¶ 8.2(l).)

18        As for his second claim, Mr. Mockovak alleges he was "denied his right to Due

19   Process" because the trial court gave an erroneous jury instruction on the entrapment

20   defense, specifically a portion of the WPIC that instructed "[t]he use of a reasonable

21   amount of persuasion to overcome reluctance does not constitute entrapment."  (State Ct.

22   Rec. I, Ex. 7 ("Direct Appeal Order") at 353; Am. Pet. ¶ 8.5.)  And for his third claim

1   regarding the *Giglio* violation, Mr. Mockovak alleges that the Government failed to

2   disclose various material facts regarding Mr. Kultin's "immigration problems" and "his

3   desire to obtain U.S. citizenship," which could have been used to impeach Mr. Kultin.

4   (Am. Pet. ¶¶ 6.173-6.191; 8.9-8.10.)

5       After a jury convicted Mr. Mockovak, he appealed his case to the Washington

6   Court of Appeals, arguing ineffective assistance of counsel related to the WPIC and the

7   failure to object to the prosecution's closing argument.[5]  (State Ct. Rec. I, Ex. 3 ("Direct

8   Appeal Br.") at 42; Direct Appeal Order at 351-52, 358 n.17.)  On May 20, 2013, the

9   Court of Appeals affirmed Mr. Mockovak's convictions on direct appeal.  (Direct Appeal

10  Order at 342, 376.)  Mr. Mockovak sought direct review by the Washington Supreme

11  Court on the issues of ineffective assistance of counsel as related to the WPIC and the

12  failure to object during closing arguments.  (State Ct. Rec. I, Ex. 8 at 383.)  The

13  Washington Supreme Court denied review without comment on November 6, 2013.  (*Id.*,

14  Ex. 16 at 553.)

15      While his direct appeal was pending, Mr. Mockovak also filed his first personal

16  restraint petition ("PRP").  (*See generally* State Ct. Rec. II (Dkt. # 43), Ex. 24 ("1st

17  PRP").)  He raised ineffective assistance of counsel as related to the jury instruction, the

18  failure to object to the prosecutor's closing argument, and the failure to present evidence

19  of learned helplessness.  (*Id.* at 794-96.)  In a supplement, he raised two additional

20  //

21  _____

22      [5] In Mr. Mockovak's direct appeal and PRPs, he raised several other issues that are not
    pertinent to his instant habeas petition.  (*See, e.g.*, Direct Appeal Br. at 42-43.)  The court
    includes here only the relevant issues.

1    ineffective assistance of counsel issues regarding the failure to impeach Mr. Kultin and

2    the cumulative impact of the many acts of allegedly deficient conduct.  (State Ct. Rec. III

3    (Dkt. # 43-1), Ex. 37 ("1st PRP Supp.") at 1527-28.)  On May 8, 2015, the Court of

4    Appeals denied the majority of Mr. Mockovak's claims but directed supplemental

5    briefing on whether his trial counsel was ineffective for failing to present evidence

6    regarding learned helplessness and referred this latter issue to a panel of three judges for

7    resolution.  (State Ct. Rec. IV (Dkt. # 44), Ex. 40 ("5/8/15 Order on 1st PRP") at 2302.)

8    On June 6, 2016, the Court of Appeals denied the PRP in its entirety and subsequently

9    denied Mr. Mockovak's motion for reconsideration.  (6/6/16 Order on 1st PRP at 17-25;

10   State Ct. Rec. IV, Ex. 47 at 2570.)  Mr. Mockovak again sought review by the

11   Washington Supreme Court on September 7, 2016, and the Washington Supreme Court

12   again denied review without comment on May 31, 2017.  (*See generally* State Ct. Rec.

13   IV, Ex. 48; *id.*, Ex. 49.)

14        On September 21, 2015, while his first PRP was pending, Mr. Mockovak filed a

15   second PRP.  (*See generally id.*, Ex. 51 ("2d PRP").)  This time, he sought review of

16   whether his Fourteenth Amendment rights were violated by the failure to disclose

17   exculpatory evidence concerning Mr. Kultin's immigration status and whether his trial

18   counsel rendered ineffective assistance by failing to question and impeach Mr. Kultin

19   with evidence regarding his immigration.  (*Id.* at 2725-26.)  The Court of Appeals denied

20   the PRP on May 6, 2019, as time-barred and again on reconsideration.  (State Ct. Rec V

21   (Dkt. # 44-1), Ex. 62 ("2d PRP Order") at 3477-89; *id.*, Ex. 66 at 3548.)  The Washington

22   //

1  Supreme Court denied review, stating that the Court of Appeals did not err in holding that

2  his second PRP was untimely.  (*Id.*, Ex. 72 at 3794-96.)

3          On May 9, 2018, while his second PRP was pending, Mr. Mockovak filed a 28

4  U.S.C. § 2254 petition in this court.  (*See* Pet. (Dkt. # 1).)  The court briefly stayed the

5  action pending the determination of the second PRP.  (*See* Mot. to Stay (Dkt. # 9);

6  7/31/18 Order (Dkt. # 10).)  After the court lifted the stay on May 6, 2020, Mr.

7  Mockovak filed an amended petition.  (*See* 5/6/20 Order (Dkt. # 25); Am. Pet.)

8          On August 6, 2020, Mr. Mockovak filed a motion for leave to conduct discovery,

9  including to serve subpoenas for government records and to take depositions, in support

10  of his *Giglio* claim.  (Disc. Mot. (Dkt. # 33) at 1-2.)  After holding oral argument, Judge

11  Peterson denied the discovery motion on October 16, 2020.  (10/16/20 Order (Dkt. # 57)

12  at 4-9; 10/13/20 Min. Entry (Dkt. # 56).)  Specifically, discovery was denied because Mr.

13  Mockovak had not demonstrated the requisite good cause, as he had not shown how

14  discovery would assist in defending against the procedural default of the *Giglio* claim and

15  because the Washington Court of Appeals had already found his allegations regarding

16  Mr. Kultin to be speculative.  (10/16/20 Order at 5-6.)  At that time, Mr. Mockovak did

17  not object to the discovery order.  (*See* Dkt.)

18          The R&R recommends denying Mr. Mockovak's habeas petition.  (*See* R&R at

19  1-2.)  Judge Peterson found that Mr. Mockovak procedurally defaulted his second and

20  third grounds for relief—the improper jury instruction due process claim and the *Giglio*

21  claim—because he had failed to exhaust these two claims.  (*Id.* at 12-19.)  Moreover,

22  Judge Peterson found that Mr. Mockovak's first ground for relief—ineffective assistance

1   of counsel—failed on the merits because Mr. Mockovak failed to show that the state

2   court's adjudication of this issue was (1) contrary to or involved an unreasonable

3   application of clearly established federal law; or (2) based on an unreasonable

4   determination of the facts in light of the evidence presented.  (*Id.* at 19-48.)  Judge

5   Peterson additionally declined to hold an evidentiary hearing and recommended that a

6   certificate of appealability be denied.  (*Id.* at 48-50.)  Mr. Mockovak timely objected,

7   contesting the large majority of the R&R.  (*See* Obj.)

8                 **III.   ANALYSIS**

9       The court first lays out the standard of review for an R&R and then addresses Mr.

10   Mockovak's objections and the certificate of appealability.

11   **A.   Standard of Review**

12       A district court has jurisdiction to review a Magistrate Judge's report and

13   recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must

14   determine de novo any part of the magistrate judge's disposition that has been properly

15   objected to."  *Id.*  "A judge of the court may accept, reject, or modify, in whole or in part,

16   the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

17   The court reviews de novo those portions of the report and recommendation to which

18   specific written objection is made.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

19   (9th Cir. 2003) (en banc).  "The statute makes it clear that the district judge must review

20   the magistrate judge's findings and recommendations de novo if objection is made, but

21   not otherwise."  *Id.*; *Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005).

22   *//*

**B.      Mr. Mockovak's Objections**

Mr. Mockovak raises 47 pages of objections to the R&R.  (*See* Obj.)  These objections contest the recommendations that the court find (1) federal habeas review of his *Giglio* claim is barred by procedural default (*id.* at 1-9), and (2) the state court's decision regarding his ineffective assistance of counsel claim was neither contrary to, or involved an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented (*see id.* at 9-47).[6]  The court addresses each category of objections in turn.

1.  Procedural Default of *Giglio* Claim

Mr. Mockovak places his objections regarding the *Giglio* claim into three categories:  (1) he did not procedurally default the claim (Obj. at 2-5); (2) Judge Peterson erred in denying his motion for leave to conduct discovery (*id.* at 5-7); and (3) Judge Peterson erred in denying an evidentiary hearing and failing to consider other evidence (*id.* at 7-9).  Because the court agrees that Mr. Mockovak procedurally defaulted his *Giglio* claim, which bars federal habeas review, the court also rejects Mr. Mockovak's objections regarding discovery and the evidentiary hearing.

Mr. Mockovak does not contest that he filed his second PRP raising the *Giglio* claim outside the one-year deadline in RCW 10.73.090 for raising a "collateral attack on

//

_____

[6] Mr. Mockovak does not object to the R&R's recommendation that his second due process claim is procedurally defaulted.  (*See* Obj.; R&R at 14-16.)  Because there are no objections to this portion of the R&R, the court need not review it de novo.  *See Wang*, 416 F.3d at 1000.  Moreover, the court has examined the record and finds the R&R's reasoning persuasive.  *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004).

1   a judgment and sentence in a criminal case." (*See* Obj. at 2-5; R&R at 16-17); *see Casey*,

2   386 F.3d at 920 (recognizing RCW 10.73.090 as independent and adequate state ground

3   to bar federal review). Instead, Mr. Mockovak maintains that he has demonstrated cause

4   and prejudice, or a fundamental miscarriage of justice, to excuse his late filing. (*See* Obj.

5   at 2-5); *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Specifically, he alleges

6   that agencies withheld information, even after he made Freedom of Information Act

7   ("FOIA") and Public Record Act ("PRA") requests, which interfered with his ability to

8   timely file his *Giglio* claim. (Obj. at 2-3.) The court disagrees.

9       As Judge Peterson articulated, to satisfy the "cause" prong, the petitioner must

10  show "some objective factor external to the defense impeded counsel's efforts to comply

11  with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); (R&R at

12  17.) For instance, cause exists if the factual or legal basis for a claim was not reasonably

13  available to counsel or some interference by officials made compliance "impracticable."

14  *Murray*, 477 U.S. at 488; *Bradford v. Davis*, 923 F.3d 599, 612 (9th Cir. 2019). In

15  *Bradford*, the confluence of three factors constituted cause: "abandonment" by counsel

16  of the prisoner's habeas petition and delay in withdrawing as counsel; the state Supreme

17  Court's response to the prisoner suggesting that his petition was not subject to a due date;

18  and the district court's delay in ruling on a motion. 923 F.3d at 613. These "unique

19  circumstances" made it impracticable to timely file the state habeas petition. *Id.*

20      No such external interference made compliance here impracticable. Prior to trial

21  in 2011, Mr. Mockovak knew about Mr. Kultin's immigration status, including that he

22  was on asylum status and had been previously arrested. (2d PRP Order at 3476, 3480;

1    Am. Pet. ¶¶ 6.183-87.)  Nevertheless, Mr. Mockovak waited years to file requests for

2    more information.  (*See* 2d PRP Order at 3475; Am. Pet. ¶ 6.192.)  He relies heavily on

3    the lack of response to these requests (Obj. at 2-3), but the record reveals that the King

4    County Prosecuting Attorney's Office produced records in five installments from

5    September 30, 2014, to October 29, 2014 (2d PRP Order at 3479; State Ct. Rec. V, Ex.

6    67 at 3621-31).  Accordingly, Mr. Mockovak had information establishing the factual

7    basis for his *Giglio* claim well before the December 4, 2014, deadline for filing his PRP,

8    and the delay, even if it did constitute state interference, did not render compliance

9    impracticable.  (*See* 2d PRP Order at 3477; State Ct. Rec. V, Ex. 67 at 3621-31; Am. Pet.

10   ¶ 6.203.)  Instead, he waited nine more months until September 2015 to file his second

11   PRP.[7]  (*See* 2d PRP Order at 3477; *see generally* 2d PRP.)  Thus, Mr. Mockovak's failure

12   to comply with the RCW 10.73.090 deadline was not due to external factors and pales in

13   comparison to the "unique circumstances" in *Bradford*.  *See* 923 F.3d at 613.

14       Mr. Mockovak objects that the R&R overlooked the rule set out in *Strickler v.*

15   *Greene*, 527 U.S. 263 (1999) and *Banks v. Dretke*, 540 U.S. 668 (2004), which states that

16   establishing a *Giglio* violation may excuse procedural default.  (Obj. at 4-5); *see*

17   *Strickler*, 527 U.S. at 282.  While this may be an accurate statement of law, it is of no

18   help to Mr. Mockovak because he has not established a *Giglio* violation.  To do so, a

19   defendant must show that evidence that was favorable to him was suppressed by the

20

21          [7] Mr. Mockovak provides no explanation for this additional delay, only that it was
     "untenable" to review the produced documents before the December deadline.  (*See* Disc. Mot.
22   at 8; Obj.)  Nor does he argue that this error constitutes ineffective assistance of counsel, which
     may establish cause.  (*See* Obj. at 2-5); *Bradford*, 923 F.3d at 612.

1    prosecution, and that he was prejudiced by the non-disclosure because the evidence was

2    material—that is, there is a reasonable probability that had the evidence been properly

3    disclosed, the result of the proceeding would have been different. *Strickler*, 527 U.S. at

4    281-82; *United States v. Bagley*, 473 U.S. 667, 674-75, 682 (1985).

5           Here, Mr. Mockovak has not demonstrated either suppression or prejudice.  As the

6    state court articulated, the prosecution had disclosed immigration information about Mr.

7    Kultin to Mr. Mockovak prior to trial and there was no evidence of suppression.  (2d PRP

8    Order at 3480-88.)  Moreover, any inference Mr. Mockovak is now drawing from the

9    PRA documents are "all speculative."  (*Id.* at 3486-88 (finding no basis for Mr.

10   Mockovak's proposed inferences); *see also* 10/16/20 Order at 5-6); *Runningeagle v.*

11   *Ryan*, 686 F.3d 758, 770 (9th Cir. 2012) (discounting "inference and supposition" in

12   determining whether evidence would be favorable).  The speculative nature of the

13   evidence undercuts its materiality.  *See Runningeagle*, 686 F.3d at 770.  Mr. Mockovak

14   relies on *Bagley v. Lumpkin*, 798 F.2d 1297 (9th Cir. 1986) (Traverse at 97-98), but in

15   that case, the suppressed information clearly established that the witnesses received

16   payment for their testimony, *Bagley*, 798 F.2d at 1299-302.  The information here,

17   however, does not so clearly establish that Mr. Kultin received any immigration benefit

18   for his testimony.  (2d PRP Order at 3486-88.)

19          Mr. Mockovak's remaining objections regarding procedural default are equally

20   unavailing.  The R&R did not, as Mr. Mockovak maintains, requires a showing that state

21   interference made compliance "impossible."  (*See* Obj. at 3.)  Instead, the court

22   considered whether Mr. Mockovak "demonstrate[d] a factor external to the defense

1   prevented him from complying" (R&R at 18)—the correct legal test under *Murray*, *see*

2   477 U.S. at 488.  Moreover, there is no requirement that the R&R discuss every case

3   cited by Mr. Mockovak in his 99-page traverse, especially when two of those cases are

4   out of circuit and thus not binding.  (*See* Obj. at 4-5.)  In fact, as discussed above,

5   *Strickler* cuts against Mr. Mockovak's argument.  Lastly, Mr. Mockovak's objection to

6   the R&R's supposed "assumption that he was obligated to do anything at all" to recover

7   *Giglio* evidence is misplaced.  (*See* Obj. at 5.)  The R&R makes no such assumption and

8   instead looks at what factor prevented compliance and concludes that it was Mr.

9   Mockovak's counsel's "choice on when to file the second PRP, and not any actions of the

10  State." (R&R at 18-19.)  The court finds no reason to reject such reasoning.

11         Because Mr. Mockovak procedurally defaulted his *Giglio* claim, discovery and an

12  evidentiary hearing regarding the merits of that claim would be futile.[8]  (*See* Obj. at 5-9;

13  10/16/20 Order at 4-6.)  Thus, the court rejects Mr. Mockovak's objections regarding his

14  *Giglio* claim and adopts this portion of the R&R.  (*See* R&R at 11-19.)

15         2.   Ineffective Assistance of Counsel

16         Mr. Mockovak's ineffective assistance of counsel arguments are measured against

17  the framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*

18  requires a party attempting to establish ineffective assistance of counsel to prove that (1)

19  "counsel's representation fell below an objective standard of reasonableness," and (2)

20  there "is a reasonable probability that, but for counsel's unprofessional errors, the result

21

22         [8] The court is also unpersuaded that Mr. Mockovak can now—more than six months
    later—object to an entirely separate order issued in October 2020.  (*See* Obj. at 5-7.)

1  of the proceeding would have been different." *Id.* at 688, 694.  Where a state court has

2  rejected an ineffectiveness claim on the merits, the "pivotal question" for a federal habeas

3  court is "whether the state court's application of the *Strickland* standard was

4  unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  As such, a federal

5  habeas court employs a "doubly deferential" review, adopting a "highly deferential look

6  at counsel's performance through the deferential lens of § 2254(d)." *Cullen v. Pinholster*,

7  563 U.S. 170, 190 (2011) (internal quotation marks omitted).

8         Mr. Mockovak raises numerous challenges to the R&R's conclusions regarding

9  his ineffective assistance of counsel claim.  (*See* Obj. at 9-47.)  Before addressing those

10  challenges, the court lays out the recommendations Mr. Mockovak does not contest:  (1)

11  his trial counsel's failure to impeach Mr. Kultin did not constitute ineffective assistance

12  (R&R at 42-43); and (2) Mr. Mockovak's trial was not fundamentally unfair under the

13  cumulative error doctrine (*id.* at 47-48).  Because Mr. Mockovak does not object to these

14  portions of the R&R, the court need not review them de novo.  *See Wang*, 416 F.3d at

15  1000.  Moreover, the court has examined the record before it, including these portions of

16  the R&R, and finds the reasoning on these issues to be persuasive.  Accordingly, the

17  court adopts these unchallenged portions of the R&R.

18         The court now moves to what Mr. Mockovak does challenge.  The court begins

19  with Mr. Mockovak's general objections regarding the R&R's organization and alleged

20  failure to consider certain legal principles or issues.  Then, the court addresses Mr.

21  Mockovak's objections regarding the R&R's conclusions on the following specific

22  conduct he alleges to be deficient:  (1) his counsel's proposal of an erroneous WPIC on

ORDER - 13

1  entrapment; (2) his counsel's failure to investigate his childhood abuse and the

2  psychological ramifications of that abuse; (3) his counsel's failure to object to the

3  prosecution's closing argument regarding the entrapment WPIC; and (4) his counsel's

4  failure to investigate Mr. Kultin's immigration details.  Finally, the court reviews Mr.

5  Mockovak's objections to the R&R's conclusions regarding the state court's

6  determination of facts and denial of an evidentiary hearing.

7           i.      *General Objections (Objections A, C-D, T, V)*[9]

8           Mr. Mockovak raises five objections to alleged general failures within the R&R.

9  First, he argues that the R&R "fails to acknowledge that once a federal habeas court

10 'conclude[s] that the state court's fact-finding process itself was defective,' then *none* of

11 the state court's findings is binding on the federal court" and the federal court should

12 "decide the habeas petitioner's claim itself."  (Obj. at 12-13 (quoting *Kipp v. Davis*, 971

13 F.3d 939, 955 (9th Cir. 2020)) (emphasis in original).)  But this argument puts the cart

14 before the horse.  The R&R did not "conclude that the state court's fact-finding process

15 itself was defective" and thus, even under Mr. Mockovak's cited authority, Judge

16 Peterson was not required to conduct an independent analysis of his claim.  *See Kipp*, 971

17 F.3d at 955; (R&R at 44-47 (concluding that state court factfinding was not unreasonable

18 under § 2254(d)(2)).)  Mr. Mockovak is free to—and does—challenge the R&R's

19 conclusions regarding the state court's fact-finding process, *see infra* § III.B.2.vi, but

20 //

21 _____

22          [9] The court labels the objections by their subheadings in Mr. Mockovak's filing.  For instance, objection A is the first subsection of the ineffective assistance section with the subheading "A. Failure to address claim of inadequate factfinding process . . . ."  (Obj. at 10.)

1   given the conclusion that the state court's factfinding was reasonable, it was not error to

2   forego an analysis that was not required.

3         Second, Mr. Mockovak criticizes how the R&R "reframes" his ineffective

4   assistance claim and addresses the purported instances of deficient conduct as separate

5   claims rather than as multiple acts under a single claim.  (Obj. at 13-14.)  At the outset,

6   the court notes that Mr. Mockovak himself has described these various grounds for

7   ineffective assistance as separate claims in previous briefings.  (*See, e.g.*, 1st PRP Supp.

8   at 1527-28.)  Furthermore, Mr. Mockovak does not explain how the R&R's alleged

9   reframing erroneously impacted its analysis.  (*See* Obj. 13-14.)  Lastly, although the R&R

10  does label the different instances as "separate and distinct ineffective assistance of

11  counsel claims," it additionally analyzed the "cumulative effect of his trial counsel's

12  multiple deficiencies."  (R&R at 23, 47-48.)  Accordingly, the court rejects this objection.

13        The remaining three objections take issue with two footnotes, in which the R&R

14  declined to consider certain arguments for failure to raise them in the state collateral

15  review process or the amended petition.  (Obj. at 10, 39-44.)   The court agrees that the

16  argument regarding counsel's failure to develop psychological evidence at sentencing

17  was not properly raised in the state collateral proceedings.  (*See* R&R at 38 n.1.)  Mr.

18  Mockovak claims to have raised this issue in his first PRP petition but cites only to

19  references to sentencing in a declaration and in the statement of facts section of his

20  supplemental reply briefing, neither of which qualifies as raising the issue to the state

21  court.  (Obj. at 44 (citing State Ct. Rec. III, Ex. 43 (supplemental reply brief with

22  declarations attached as appendices)).)

1     The court further agrees that Mr. Mockovak did not raise certain issues in his

2  amended petition.  First, he did not raise the state court's refusal to consider declaration

3  evidence under 28 U.S.C. § 2254(d)(2).  (*See* R&R at 44 n.2.)  While Mr. Mockovak

4  raised this failure as a reason why he is "entitled to an evidentiary hearing in this court"

5  (Am. Pet. ¶¶ 9.1-9.2, 9.5), he did not include this failure as a ground justifying relief

6  under § 2254(d)(2) (*see id.* ¶¶ 10.1-10.13).  Tellingly, in contending that he had properly

7  raised this issue in his amended petition, Mr. Mockovak cites only to the procedural

8  history section, the evidentiary hearing section, and the general citation to § 2254(d)(2) in

9  the relief section.  (Obj. at 10; Supp. Br. (Dkt. # 82) at 2.)  He did not argue in any of

10  these sections that the state court's refusal to consider declaration evidence rendered its

11  factfinding process unreasonable under § 2254(d)(2).  Finally, the court finds that Mr.

12  Mockovak's argument concerning *State v. Solomon*, 419 P.3d 436 (Wash. Ct. App. 2018)

13  is better characterized as legal argument on whether the jury instruction is erroneous.

14  (*See* Traverse at 73-74 (raising *Solomon* as support that he would have prevailed in his

15  direct appeal "[i]f the state appellate court had acknowledged that [he] properly raised his

16  contentions in his briefing").)  As discussed below, the R&R correctly rejected this

17  argument, and thus the court finds no occasion to discuss *Solomon*.  *See infra* § III.B.2.vi.

18     ii.    *Jury Instruction on Entrapment (Objections E-I)*

19     Next, Mr. Mockovak raises five objections to the R&R's conclusion that the state

20  court's adjudication regarding the entrapment jury instruction was not contrary to

21  Supreme Court precedent.  (Obj. at 14-21; R&R at 27-31.)  These objections center on

22  Mr. Mockovak's contention that his counsel "did not know the applicable legal test" for

1   entrapment and thus proposed an erroneous WPIC.  (Obj. at 14; *see also id.* at 18-19

2   (arguing that deficient performance eliminates presumption that counsel's decisions were

3   objectively reasonable), 19-20 (providing evidence that counsel did not know law of

4   entrapment); Traverse at 36-49; Am. Pet. ¶¶ 8.2(b)-(c).)  Mr. Mockovak focuses on a

5   portion of the state court's decision that "assum[ed] counsel suffered from some

6   misunderstanding of the law"; he maintains that a misunderstanding of the law, taken

7   alone, constitutes deficient conduct.  (*See* Obj. at 15; 6/6/16 Order on 1st PRP at 21.)

8        As a preliminary matter, it is not clear that Mr. Mockovak provided the state

9   courts an adequate opportunity to rule of the merits of this argument—that failure to

10  know the law, on its own, constitutes deficient conduct—as his argument has morphed

11  since his direct appeal and PRP.  The legal bases for the claims before the state court

12  must be the "substantial equivalent" of those in the federal petition.  *Picard v. Connor*,

13  404 U.S. 270, 277-78 (1971).  Federal courts "should conclude that legal claims are not

14  substantially equivalent and therefore not exhausted if . . . they arise under the same

15  constitutional provision but are logically distinct or are based on different and unrelated

16  lines of precedent."  *Jay v. Kane*, No. C 06-01795 CW, 2006 WL 2925689, at *2 (N.D.

17  Cal. Oct. 12, 2006).  Here, Mr. Mockovak's ineffective assistance claim based on the jury

18  instruction, raised first on direct appeal and again in his first PRP, argued only that it was

19  deficient conduct to propose the WPIC.  (Direct Appeal Br. at 41, 111-19; 1st PRP at

20  816-22.)  While he discussed his counsel's research (1st PRP at 819-21), he did not argue

21  that failure to know the law was, in itself, deficient conduct (*see id.* at 816-22).

22  //

1    These two arguments are "logically distinct" and are "based on different and

2    unrelated lines of precedent." *See Jay*, 2006 WL 2925689, at *2.  The former analyzes

3    whether there was case law indicating that the WPIC contained an incorrect statement of

4    law—an issue of state law—whereas the latter involves Supreme Court precedent

5    regarding the constitutional effect of counsel's failure to know the applicable law.  (*See*

6    Direct Appeal Order at 353-57); *Hinton v. Alabama*, 571 U.S. 263, 274-75 (2014).  Thus,

7    the state court did not have a fair opportunity to rule on this specific basis for ineffective

8    assistance.  (*See generally* Direct Appeal Br.; 1st PRP.)  Not surprisingly then, Mr.

9    Mockovak cherry-picks a portion of the state decision that addressed the learned

10   helplessness issue, not the jury instruction issue.[10]  (*See* Obj. at 15 (citing "Dkt. 42-1 at

11   21," which is the June 6, 2016, decision addressing only whether "his trial counsel was

12   ineffective for failing to support his entrapment defense with expert testimony that he

13   suffers from 'learned helplessness'").)

14   But even accepting that this portion of the state court's decision was about

15   counsel's failure to know entrapment law, it is not contrary to clearly established federal

16   law.  First, to state the obvious, an "assumption" that counsel misunderstood the law is

17   not a finding that his counsel failed to know the law on entrapment; to the contrary, the

18   state court held that counsel did not err in proposing the pattern instruction because there

19   was no case law indicating that the instruction misstated the law.  (*See* Direct Appeal

20   //

21
22   [10] Because Mr. Mockovak cites to the state decision discussing an entirely different issue,
     he is incorrect that the state court "'assumed' that . . . his trial attorneys did not have a correct
     understanding of the law of entrapment."  (*See* Obj. at 15; 6/6/16 Order on 1st PRP at 21-22.)

1    Order at 353-58.)  Moreover, the R&R correctly held that the state court's reasoning was

2    not contrary to Mr. Mockovak's proffered authority.[11]  (*See* R&R at 30.)  Mr.

3    Mockovak's identified case law stands for the proposition that an attorney's mistake of

4    law, perpetuated by a failure to perform basic research, constitutes deficient performance.

5    *See Hinton v. Alabama*, 571 U.S. 263, 274-75 (2014).  Inherent in this proposition is

6    some act or omission by counsel that is a mistake—that is, some conduct that is fueled by

7    the ignorance of the law.  *See id.* (discussing counsel's failure to request additional

8    funding); *see also Williams v. Taylor*, 529 U.S. 362, 395 (2000) (reviewing failure to

9    uncover mitigation documents); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986)

10   (evaluating failure to file timely suppression motion).  But here, the state court

11   determined that there was no such mistake of law—the proposed WPIC regarding

12   entrapment was accurate.  (Direct Appeal Order at 353-58.)  Thus, the state court's

13   conclusion—that even if Mr. Mockovak's counsel misunderstood the law, that

14   misunderstanding alone, with no corresponding mistaken conduct, is not deficient—was

15   not contrary to *Hinton*, *Williams*, or *Kimmelman*.[12]

16   //

17   _____

18   [11] Mr. Mockovak states that the R&R "fail[ed] to address his argument that the state court
     decision is contrary to . . . *Hinton*, *Williams* . . . and *Kimmelman*."  (Obj. at 14.)  This is patently
     false.  (*See* R&R at 30.)

19
20   [12] Because the court finds no occasion to disturb the state court's conclusion that there
     was no deficient conduct, it rejects Mr. Mockovak's objection that the R&R failed to "address
     the rule that a finding of deficient performance eliminates the presumption that trial counsel's

21   decisions were objectively reasonable." (*See* Obj. at 18.)  Similarly, the court also rejects Mr.
     Mockovak's objection challenging the R&R's failure to consider "unrebutted evidence" of
     counsel's ignorance of entrapment law because even so, Mr. Mockovak would not prevail on his

22   ineffective assistance claim in these circumstances.  (*See id.* at 19-20.)

1     Such reasoning does not, as Mr. Mockovak suggests, confuse the first prong of

2  deficient conduct with the second prong of prejudice.  (*See* Obj. at 16-17.)  Prejudice

3  looks at whether, but for the "unprofessional errors, the result of the proceeding would

4  have been different."  *Strickland*, 466 U.S. at 694.  The state court's determination lays

5  out a requirement that is much more logical:  that for performance to be deficient, there

6  must be some conduct—some act or omission adverse to the defendant.[13]  To that end,

7  the court also disagrees with Mr. Mockovak that the R&R and state court misplaced their

8  reliance on *Harrington*.  (*See* Obj. at 17-18.)  While Mr. Mockovak is correct that

9  *Harrington* concerned "Monday-morning quarterbacking by the trial counsel after he lost

10  the case" (*id.* at 17), *Harrington* also stood for the more basic proposition that what

11  matters is the "objective reasonableness of counsel's performance," 562 U.S. at 110.

12  Here, the "performance" at issue was counsel proposing the WPIC on entrapment, which

13  the state court found was objectively reasonable.  (Direct Appeal Order at 353-58.)

14     Similarly, Mr. Mockovak's reliance on *United States v. Brisbane*, 729 F. Supp. 2d

15  99 (D.D.C. 2010) is misplaced.  (*See* Obj. at 20-21.)  In *Brisbane*, the defendant's counsel

16  declined to pursue an entrapment defense.  729 F. Supp. 2d at 112.  The court held that if

17  this failure was due to counsel's erroneous belief that the defendant must admit to the

18  commission of the crime, then "the [c]ourt cannot say at this juncture . . . that those

19  decisions were reasonable strategic decisions within 'the wide range of professionally

20

21     _____

   [13] Although the state court does not reach the prejudice prong, it bears noting that even if
   counsel's assumed ignorance of the law here was deficient, there would certainly be no prejudice
22  as the result of that ignorance was the proper proposal of a WPIC.  (*See* Direct Appeal Order at
   353-58; 5/8/15 Order on 1st PRP at 2309-11.)

1    competent assistance.'"[14]  *Id.* at 112-13 (quoting *Strickland*, 466 U.S. at 690).  Thus,

2    *Brisbane* featured some mistaken conduct—failing to present an entrapment defense—

3    that the state court here held was not present in Mr. Mockovak's case regarding the

4    WPIC.  *See id.*; (Direct Appeal Order at 353-58.)  As a result, *Brisbane* is far from

5    "nearly identical," and the court rejects this objection.  (*See* Obj. at 20-21.)

6          In sum, none of Mr. Mockovak's objections regarding his counsel's knowledge of

7    the law regarding the entrapment defense and proposal of the WPIC are availing.  Thus,

8    the court adopts the portion of the R&R addressing this issue and denies the

9    corresponding portion of Mr. Mockovak's petition.  (*See* R&R at 27-31.)

10          *iii.    Failure to Investigate Childhood Abuse (Objections J-R)*

11          Mr. Mockovak subsequently objects to the R&R's conclusions regarding his

12   ineffective assistance claim based on his counsel's failure to investigate and present

13   evidence of how his childhood abuse made him particularly susceptible to entrapment.

14   (Obj. at 21-44.)  He challenges conclusions regarding both the deficient conduct and

15   prejudice prongs of *Strickland* and must succeed on both prongs to obtain relief.  (*See*

16   Obj. at 21-44); *see* 466 U.S. at 688, 694.  Because the court finds that the state court's

17   finding of no prejudice is not contrary to or an unreasonable application of clearly

18   established federal law, it focuses only on the objections concerning prejudice.

19          First, Mr. Mockovak argues that the state court's prejudice analysis is contrary to

20   *Sears v. Upton*, 561 U.S. 945 (2010).  The court agrees with the R&R's rejection of this

21

22          [14] Under federal law, "a defendant need not admit that he committed the crime as a
     prerequisite to presenting an entrapment defense."  *Brisbane*, 729 F. Supp. 2d at 112.

argument.  (*See* R&R at 36-38.)  *Sears* involved counsel's failure to uncover mitigation evidence that could have been used in the penalty phase.  561 U.S. at 951-52.  In its prejudice analysis, the state court concluded that because there was some mitigation evidence presented, "it is impossible to know what effect [a different mitigation theory] would have had on [the jury]."  *Id.* at 952.  The Supreme Court identified two errors with this analysis:  1) "curtail[ing] a more probing prejudice inquiry" placed "undue reliance on the assumed reasonableness" of what was presented; and 2) the presence of some mitigation evidence should not "foreclose a[] [prejudice] inquiry."  *Id.* at 953-55.  Unlike the state court in *Sears*, the state court here underwent a prejudice inquiry and did not shirk that inquiry simply because some defense theory was presented.  (*See* 6/6/16 Order on 1st PRP at 23-25.)

Mr. Mockovak's argument in this objection seems to focus more on the state court's deficient conduct analysis than its prejudice analysis.  For instance, Mr. Mockovak discusses the reasonableness of his counsel's decision to not open the door to damaging rebuttal evidence (Obj. at 30), an aspect of the state court's reasoning in considering the adequacy of counsel's performance (6/6/16 Order on 1st PRP at 20).  Moreover, the sentence in the R&R that Mr. Mockovak challenges was not about prejudice but instead deficient conduct.  (*See* Obj. at 30-31 (taking issue with portion of sentence that begins with "The Court of Appeals found [Mr. Mockovak] failed to demonstrate his trial counsel's performance was deficient on the basis of . . . .").)  The court, therefore, finds that these arguments are not on point.

//

1    Second, Mr. Mockovak contests the R&R's conclusion that the state court's

2  prejudice analysis was neither contrary to nor an unreasonable application of *Strickland*.

3  (Obj. at 31-34.)  He contends that the state court did not consider the "totality of the

4  evidence" because the summary of the psychological evidence appears a few pages

5  earlier in the deficient conduct section of the state court's decision.  (*Id.* at 31; 6/6/16

6  Order on 1st PRP at 19-20.)  Essentially, Mr. Mockovak argues that because the state

7  court did not reiterate this evidence when considering prejudice, it did not consider this

8  evidence, even though the state court held that Mr. Mockovak "does not demonstrate a

9  reasonable probability that the outcome would have been different had evidence of his

10  learned helplessness been presented."  (6/6/16 Order on 1st PRP at 23; *see also id.* at

11  24-25 (concluding after summarizing evidence against Mockovak that "[t]here is no

12  reasonable probability that the learned helplessness evidence would have changed the

13  outcome of the trial").)  While a more detailed re-articulation of the learned helplessness

14  evidence may have been helpful to flesh out the analysis, not doing so is not objectively

15  unreasonable and does not mean, as Mr. Mockovak urges, that the state court did not

16  consider his psychological evidence, especially when the remainder of the opinion makes

17  clear that the state court was well aware of and familiar with the evidence. (*See generally*

18  6/6/16 Order on 1st PRP at 19-25.)

19    Neither of Mr. Mockovak's proffered authority says otherwise.  The court agrees

20  with the R&R's conclusion that the state court did consider the totality of the evidence,

21  and therefore, the state court's decision is not contrary to *Williams*.  (*See* Obj. at 31-32;

22  R&R at 38); 529 U.S. at 364.  *Williams* found that the state court's prejudice analysis was

1   unreasonable because it "failed even to mention" a mitigation argument that, considered

2   with the rest of the mitigation evidence, could have altered the jury's determination.  529

3   U.S. at 398.  The state court here did not "fail[] even to mention" any portion of Mr.

4   Mockovak's psychological evidence.  (*See* 6/6/16 Order on 1st PRP at 19-25.)  *White v.*

5   *Ryan*, 895 F.3d 641, 671 (9th Cir. 2018) is even farther afield.  (*See* Obj. at 32.)  *White*

6   faulted the state court for "analyz[ing] prejudice separately for each of [the] different

7   types of mitigating evidence . . . rather than considering the prejudice resulting from the

8   omission this evidence in the aggregate."  895 F.3d at 671. There is no indication that the

9   state court here analyzed Mr. Mockovak's psychological evidence separately.[15]  (*See*

10  6/6/16 Order on 1st PRP at 23-25.)

11       Mr. Mockovak's third objection fares no better and is frankly puzzling.  He faults

12  the state court for citing to *In re Carce*, 280 P.3d 1102 (2012), to support the general

13  statement of law that he must "demonstrate a reasonable probability that the outcome

14  would have been different had evidence of his learned helplessness been presented."

15  (Obj. at 34-35.)  He reasons that because the Ninth Circuit subsequently vacated *In re*

16  *Carce*, the state court's reliance on *In re Carce*'s rule statement "confirms that it failed to

17  understand and reasonably apply *Strickland*'s test for prejudice."  (*Id.* at 35.)  But the

18  Ninth Circuit reversed certain presumptions *In re Carce* made in its prejudice analysis

19  about lesser crimes, not *In re Carce*'s articulation of the prejudice standard that was

20

21       [15] Mr. Mockovak filed a supplemental brief on the recent decision *Jones v. Ryan*, ---
     F.4th ----, 2021 WL 2641914 (9th Cir. June 28, 2021).  (*See* Supp. Br.)  As relevant here, the

22  state court in *Jones* "did not reach the issue of prejudice," so the Ninth Circuit's review was de
     novo.  *Id.* at *12.  Here, the court applies the much higher § 2254(d) standard of review.  *See id.*

quoted from *Harrington*.  *See Carce v. Herzog*, 798 F.3d 840, 849 (9th Cir. 2015); *In re Carce*, 280 P.3d at 1107.  Surely, Mr. Mockovak could not be suggesting that the general rule statement is incorrect, and there is no indication that the state court adopted any other portion of *In re Carce*'s prejudice analysis.  (*See generally* 6/6/16 Order on 1st PRP at 23 n.42 (citing *In re Carce* only for general rule statement).)

Lastly, Mr. Mockovak's objection relying on *Lopez v. Attorney General for Nevada*, 845 F. App'x 549 (9th Cir. 2021) is equally unavailing.[16]  (*See* Obj. at 35-36.) Putting aside the fact that *Lopez* concerned sentencing—a stage at which the Ninth Circuit found expert medical testimony to be especially important—the state court there "failed to consider or even mention [the] expert psychological opinion" at issue.  *Id.* at 553.  Not so here.  As discussed above, the state court may not have laid out the contents of Mr. Mockovak's learned helplessness evidence again in the prejudice section of its decision, but it did not "fail[] to consider or . . . mention" that evidence.  *See id.*; (6/6/16 Order on 1st PRP at 19-25.)

All in all, the court agrees with and adopts the R&R's analysis and conclusions regarding prejudice as to Mr. Mockovak's ineffective assistance of counsel claim related to his psychological evidence.  Accordingly, the court denies Mr. Mockovak's ineffective assistance of counsel claim on this ground.

//

//

---

[16] Under Federal Rules of Appellate Procedure Ninth Circuit Rule 36-3(a), unpublished decisions such as *Lopez* "are not precedent."  *See* U.S. Ct. of App. 9th Cir. Rule 36-3(a). However, for the sake of completeness, the court distinguishes the case.

1              *iv.     Failure to Object During Closing Argument (Objection U)*

2             Next, Mr. Mockovak objects to the R&R's conclusion regarding his counsel's

3 failure to object during closing arguments.  (Obj. at 42-43.)  On this issue, the state court

4 found that the prosecutor's statement during closing argument—that there were

5 "essentially three elements" to the entrapment defense—was based upon the jury

6 instruction given by the court, which the state court also determined was a correct

7 interpretation of the law.  (Direct Appeal Order at 353-58, 358 n.11.)  Because the state

8 court's analysis of the jury instruction, a state law issue, is binding on a federal habeas

9 court, *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), the R&R did not need to analyze,

10 as Mr. Mockovak contends (Obj. at 43), the statute defining entrapment or previous state

11 court cases analyzing the defense.

12             Furthermore, the R&R recognized the difference between the instruction and the

13 prosecutor's statement but found no reason to conclude that the state court unreasonably

14 applied *Strickland*.  (*See* R&R at 40-41.)  The court agrees.  Absent "egregious

15 misstatements," the failure to object during closing argument is "within the 'wide range'

16 of permissible professional legal conduct."  (R&R at 40) (quoting *United States v.*

17 *Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993)).  Stating that there are "essentially three

18 elements" when the instruction provided for four components is not a sufficiently

19 egregious misstatement of the law.  (*See* Direct Appeal Order at 358 n.11; Direct Appeal

20 Br. at 163); *see Zapata v. Vasquez*, 788 F.3d 1106, 1113-16 (9th Cir. 2015) (finding

21 prosecutor's summary about experience of victim that was "pure fiction,"

22 "inflammatory" and "wholly extraneous" to be egregious misstatement); *People v. Lewis*,

1    --- N.E.3d ----, 2020 WL 6689761, at *8-9 (Ill. App. Ct. 2020) (finding closing argument

2    that shifted burden to be egregious misstatement).  Accordingly, the court rejects Mr.

3    Mockovak's objections to the R&R regarding this purported misconduct and adopts this

4    portion of the R&R.

5          *v.      Failure to Investigate Mr. Kultin's Immigration Details (Objection W)*

6          Mr. Mockovak objects to the R&R's conclusion that his counsel's failure to

7    further investigate Mr. Kultin's immigration status was not deficient conduct under

8    *Strickland*.  (Obj. at 45-47.)  Specifically, he maintains that the R&R "fails to analyze the

9    failure to investigate and discusses only the failure to cross-examine [Mr.] Kultin." (*Id.*

10   at 45.)  Not so.  Although the R&R collapsed its analysis of the investigation and

11   cross-examination issues, it clearly discussed both "further investigation or

12   cross-examination of [Mr.] Kultin" as tactical decisions of counsel that are afforded

13   deference on habeas review.  (R&R at 43.)  Thus, the R&R did not, as Mr. Mockovak

14   alleges, "ignore[] all of these facts regarding [trial counsel's] failure to investigate and all

15   of the facts that trial counsel never learned." (Obj. at 46; *see* R&R at 43 (listing facts that

16   Mr. Mockovak claimed should have been investigated, including Mr. Kultin's "prior

17   arrest," his citizenship status, and "whether he was offered assistance with his

18   immigration status by the Government").)

19         The court, after a de novo review, concurs with the R&R that this ground for the

20   ineffective assistance claim should be dismissed but for a different reason:  Mr.

21   Mockovak procedurally defaulted this claim by not raising it until his untimely second

22   PRP.  While Mr. Mockovak had raised ineffective assistance of counsel claims in his first

PRP, those were not based upon the failure to investigate Mr. Kultin's immigration status or cross-examine him using those facts. (*See* 1st PRP at 794-95 (basing ineffective assistance claims on failure to move to suppress recordings; submission of erroneous jury instruction; failure to object during closing argument; and failure to present evidence of learned helplessness); 1st PRP Supp. at 1527-28 (raising in supplemental PRP brief additional ineffective assistance claims based on failure to impeach Mr. Kultin on relationship with Mr. Klock and cumulative impact of previously listed conduct). Instead, Mr. Mockovak raises "the failure . . . to question Mr. Kultin about his immigration and citizenship status" in his second PRP, which the state court declined to consider on the merits because it was untimely. (2d PRP at 2743-46 (all caps removed); 2d PRP Order at 3489 n.4.) As discussed above, the court agreed that Mr. Mockovak's second PRP, containing his *Giglio* claim, was untimely and no cause excused that late filing. *See supra* § III.B.1. The same reasoning applies here, as the facts underlying his *Giglio* claim mirrors those underlying this issue.

Because the state court did not consider the issue on the merits, there is no occasion for this court to ascertain whether "the state court's application of the *Strickland* standard was unreasonable." *See Harrington*, 562 U.S. at 101. Tellingly, neither Mr. Mockovak nor the R&R analyzes the state court's analysis of this issue, as there is no analysis to review. (*See* R&R at 43-44; Obj. at 45-47; Am. Pet. ¶ 8.2(j); Traverse at 9-11, 98 n.43.) Because it is not the role of a federal habeas court to evaluate in the first instance whether counsel's performance fell below the *Strickland* standard, *Harrington*, 562 U.S. at 101, and because a federal habeas court cannot review procedurally defaulted

claims, *Casey*, 386 F.3d at 920, the court dismisses this ground for relief.  The court

rejects this portion of the R&R that discusses whether counsel's performance in this

regard satisfies *Strickland*.  (*See* R&R at 43-44.)

       *vi.*     *Section 2254(d)(2) (Objection S)*

       Mr. Mockovak next objects to the R&R's rejection of his § 2254(d)(2) claim

regarding whether he had raised an argument on direct appeal.[17]  (Obj. at 37-39.)  This

objection concerns the state court's refusal on direct appeal to consider whether

entrapment contains both an objective and subjective element because it found that Mr.

Mockovak had improperly raised the argument for the first time in oral arguments.  (Obj.

at 37-39 (citing Direct Appeal Order at 357 n.9).)  Mr. Mockovak qualifies this finding as

an unreasonable determination of the facts because he had raised the argument in his

opening brief.  (Obj. at 37-38; *see* Direct Appeal Br. at 77-80.)  He maintains that

because the state court failed to address this issue on direct appeal, "it is now this Court's

responsibility to conduct an independent review of that argument" and objects to the

R&R's failure to do so.  (Obj. at 39.)

       The R&R found "whether [Mr. Mockovak] properly raised an issue on direct

appeal is . . . a legal issue under state law."  (R&R at 46.)  Mr. Mockovak argues that

whether he raised the argument and when he did so are determinations of fact.  (Obj. at

37-38.)  Mr. Mockovak wins this battle, as the court agrees that the question of whether

---

[17] Mr. Mockovak does not object to the R&R's conclusion on his other § 2254(d)(2) argument regarding his failure to cite any case that would have alerted trial counsel that the WPIC on entrapment was flawed.  (*See* Obj.; R&R at 44-46.)  The court, after its own review, agrees with the R&R on this issue and adopts this portion of the R&R.

1    and when he raised an issue is a question of fact underpinning the legal issue of whether

2    an argument is properly raised.  *See Brumfield v. Cain*, 576 U.S. 305, 313 n.3 (2015)

3    (distinguishing between legal questions and underlying factual conclusions).  However,

4    Mr. Mockovak still loses the war because the R&R rejected this § 2254(d)(2) argument

5    for another reason:  The decision on direct appeal was not "the last reasoned decision on

6    whether Washington law governing entrapment includes both an objective and a

7    subjective element."  (R&R at 46); *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir.

8    2012) (reviewing state court's last reasoned decision on federal habeas review).  Mr.

9    Mockovak is silent on this alternative reasoning.  (*See* Obj.)

10          After its own review, the court agrees with the R&R's second line of reasoning.

11   Although the state court on direct appeal based its conclusion to bypass the argument on

12   an erroneous factual finding, the state court on collateral review, in denying Mr.

13   Mockovak's first PRP, held that "[t]he entrapment instruction . . . contained both

14   objective and subjective elements and correctly states the law."  (6/6/16 Order on 1st PRP

15   at 22-23, n.39; 5/8/15 Order on 1st PRP at 2310-11.)  The last reasoned state-court

16   decision is that of the collateral review court.  The state court's factual finding on direct

17   appeal, even if it were mistaken, says nothing about whether the state court's conclusion

18   on collateral review was based upon an unreasonable factual determination, as is required

19   for Mr. Mockovak to obtain relief.  Because Mr. Mockovak has not made this requisite

20   //

21   //

22   //

ORDER - 30

1    showing regarding the state court's last reasoned decision, the court dismisses his

2    § 2254(d)(2) claim and adopts only the portion of the R&R detailing this reasoning.[18]

3            *vii.    Denial of Evidentiary Hearing (Objection B)*

4            Finally, Mr. Mockovak objects to the R&R's recommendation that the

5    § 2254(d)(2) claim can be resolved on the state court record without an evidentiary

6    hearing.  (Obj. at 11-12.)  This objection misses the mark.  The majority of the objection

7    focuses on one sentence in the R&R, which states that the state court's "refusal to

8    consolidate his claim of ineffective assistance of counsel in his direct appeal with his first

9    PRP to consider the declaration evidence concerns an interpretation of Washington state

10   procedural law, and therefore, the [state court] decision on how to process the claim is

11   binding."  (Obj. at 11; *see* R&R at 49.)  Contrary to Mr. Mockovak's contentions, the

12   R&R's deference to a state court's ruling on state procedural law is not misplaced.  *See*

13   *Bradshaw*, 546 U.S. at 76 ("[A] state court's interpretation of state law . . . binds a federal

14   court sitting in habeas corpus."); (*see* Obj. at 11.)  Mr. Mockovak offers no case law

15   supporting his contention that this deference depends on whether the ruling was on a

16   procedural or substantive state law.  (*See* Obj. at 11.)

17          The remainder of the objection involves the state court's failure to consider

18   declaration evidence when making factual determinations.  (Obj. at 12.)  Mr. Mockovak

19   cites *Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004) to argue that "the state court's

20

21   _____

     [18] Because the state Court of Appeals has spoken on this issue of state law in its rejection
     of Mr. Mockovak's PRP, his insistence that *Solomon* supports his claim is misplaced.  (*See* Obj.
22   at 39-42); *Bradshaw*, 546 U.S. at 76 (holding that state court interpretation of state law issue is
     binding on federal habeas court).

1   failure to consider the petitioner's evidence . . . rendered the factfinding process

2   objectively unreasonable." (*Id.*)  In other words, this objection does not address the

3   R&R's denial of an evidentiary hearing but is instead another attempt to raise the

4   argument that the state court's factfinding process was unreasonable under § 2252(d)(2),

5   which the court has already rejected for procedural reasons.  *See supra* § III.B.2.i

6   (adopting R&R's conclusion that Mr. Mockovak improperly raised this issue for first

7   time in traverse).[19]

8       The court agrees with the R&R that an evidentiary hearing was not necessary for

9   the reasons articulated therein and adopts this portion of the R&R.  (*See* R&R at 48-50.)

10  **C.    Certificate of Appealability**

11      A certificate of appealability may issue only if the petitioner "has made a

12  substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

13  Supreme Court has recognized that the "substantial showing" standard for a certificate of

14  appealability is relatively low.  *See Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir.

15  2002); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  A certificate of appealability

16  should be granted for any issue that a petitioner can demonstrate is debatable among

17  jurists of reason, could be resolved differently by a different court, or is adequate to

18  deserve encouragement to proceed further.  *Jennings*, 290 F.3d at 1010.  The court must

19  //

20  //

21

22  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [19] For the same reasons, Mr. Mockovak's reliance on *Jones v. Ryan* is unavailing.  (*See* Supp. Br. at 2.)  *Jones* does not excuse Mr. Mockovak's failure to raise the issue in his amended petition.

1   resolve doubts about the propriety of a certificate of appealability in the petitioner's

2   favor. *Id.*

3         The R&R recommends that a certificate of appealability be denied as to all claims,

4   and the court largely agrees.  (*See* R&R at 50.)  However, the court finds that jurists of

5   reason could disagree on Mr. Mockovak's ineffective of assistance claim related to the

6   prejudicial effect of his trial counsel's failure to investigate and present psychological

7   evidence about his vulnerability to entrapment. *See supra* § III.B.2.iii.  Accordingly, the

8   court grants a limited certificate of appealability related only to this issue and rejects the

9   portion of the R&R denying a certificate of appealability.

## IV.    CONCLUSION

11         For the foregoing reasons, the court ADOPTS in part the R&R (Dkt. # 75) as

12   specified above[20] and DENIES Mr. Mockovak's objections (Dkt. # 78).  Mr. Mockovak's

13   petition for a writ of habeas corpus (Dkt. # 28) is DENIED.  The court GRANTS a

14   certificate of appealability on the issue of prejudice regarding his counsel's alleged

15   failure to investigate and present psychological evidence.  The court DIRECTS the Clerk

16   to send copies of this order to counsel and to Magistrate Judge Peterson.

17         Dated this 23rd day of July, 2021.

JAMES L. ROBART
United States District Judge

---

[20] The court adopts any portion of the R&R that is not explicitly rejected.